UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MICHAEL CHARLES COMTOIS,

        Petitioner,

                                CASE NO. 14-13286

v.

                                PAUL D. BORMAN
KENNETH MCKEE,                 UNITED STATES DISTRICT JUDGE

        Respondent.

_____/


**OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION
AND DENYING A CERTIFICATE OF APPEALABILITY, BUT
<u>GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL</u>**

       This matter has come before the Court on petitioner Michael Charles Comtois' *pro se* habeas corpus petition under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's convictions for first and second-degree criminal sexual conduct. Petitioner contends that the evidence at trial was insufficient, the complainant perjured herself, the prosecutor failed to try him in a timely manner and also engaged in misconduct during closing arguments, and his trial and appellate attorneys were ineffective. The State argues in an answer to the petition that five of Petitioner's claims are procedurally defaulted and that the state courts' adjudications of Petitioner's other claims were not contrary to, or unreasonable applications of, Supreme Court precedent. The Court agrees with the State's assessment of Petitioner's claims. Accordingly, the petition will be denied.

# I. Background

Petitioner was charged in Bay County, Michigan with one count of first-degree criminal sexual conduct and two counts of second-degree criminal conduct. The charges arose from an incident involving a seventeen-year-old girl who had a learning disability.

The prosecutor's theory on count one was that Petitioner penetrated the complainant's labia majora, using force or coercion and causing injury. The prosecutor argued in the alternative that Petitioner was guilty of third-degree criminal sexual conduct because the complainant was mentally incapable of giving consent or of appraising the nature of her conduct.

Counts two and three charged Petitioner with second-degree criminal sexual conduct for touching the complainant's breast, using force or coercion and causing injury. The prosecutor argued in the alternative that Petitioner was guilty of fourth-degree criminal sexual conduct because the complainant was mentally incapable at the time of the sexual contact.

Petitioner was tried before a jury in Bay County Circuit Court. The Michigan Court of Appeals summarized the facts as follows:

> On the day of the assault, the victim met defendant at a park and he asked her to walk with him. The victim testified that she and defendant walked through some woods and that at some point he picked flowers for her. The victim recalled that defendant later touched her buttocks and that she objected, that he pushed her to the ground and got on top of her, and that he lifted up her shirt and bra and repeatedly touched her breasts.[1] The victim also described that defendant took her overalls and underwear off as she

---

[1] A nurse practitioner who examined the victim testified that the victim told her that defendant had also licked and sucked her breasts.

tried to resist, that he managed to push his pants partially down and move her legs apart, that he put his penis partly inside her, and that he placed handfuls of dirt in her mouth to prevent her from yelling for help and threatened to kill her if she screamed. After the assault, defendant told the victim not to tell anyone what had occurred, but the next day she told friends about the attack.

*People v. Comtois*, No. 286965, 2009 WL 5150061, at *1 (Mich. Ct. App. Dec. 29, 2009) (unpublished)(footnote in original).

Petitioner did not testify, and his only witness was David Biscigo, an employee of the Michigan State Police Crime Lab. Biscigo testified that a man can ejaculate seminal fluid even if he does not have a full erection and that seminal fluid on the complainant's underwear could have drained from the complainant's vagina or come from pre-ejaculate or ejaculate. Biscigo also testified that bodily fluid could have been deposited on the complainant regardless of whether penetration occurred and that, if fluid was deposited near her genital area, the fluid could have transferred from the genital area to her underpants. Defense counsel argued to the jury that the complainant was not credible, that there was no force or coercion, that the complainant consented to the sexual activity and was mentally capable of consenting, and that there was no sexual penetration.

On May 20, 2008, the jury found Petitioner guilty, as charged, of one count of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1), and two counts of second degree criminal sexual conduct, Mich. Comp. Laws § 750.520(c)(1). The trial court sentenced Petitioner as a habitual offender to imprisonment for fifteen to twenty-three years for the first-degree conviction and to a concurrent term of five to fifteen years in prison for the second-degree convictions.

In an appeal of right, Petitioner argued that (1) the evidence at trial was insufficient to prove penetration of the complainant's genital opening and (2) the trial court erred by denying his motion to correct the sentence for errors in the scoring of the sentencing guidelines. The Michigan Court of Appeals found no merit in Petitioner's claims and affirmed his convictions and sentence in an unpublished, *per curiam* opinion. *See Comtois*, 2009 WL 5150061. Petitioner raised the same two issues and one new issue about appellate counsel in an application for leave to appeal in the Michigan Supreme Court. On May 25, 2010, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Comtois*, 486 Mich. 930 (2010).

Petitioner subsequently filed a motion for relief from judgment in which he raised issues about the sufficiency of the evidence, the alleged use of perjury, the delay in trying him, the prosecutor's conduct, the scoring of the sentencing guidelines, and his trial and appellate attorneys' assistance. The trial court found it unnecessary to decide Petitioner's claim about the sentencing guidelines because the Michigan Court of Appeals rejected that issue on direct appeal. As for the remaining issues, the trial court stated that Petitioner had not shown "good cause" for failing to raise the issues on appeal and "actual prejudice" from the alleged irregularities. The court denied Petitioner's motion pursuant to Michigan Court Rule 6.508(D). *See People v. Comtois*, No. 05-10619-FC (Bay Cty. Cir. Ct. Mar. 15, 2013). Petitioner appealed the trial court's decision, but both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See*

*People v. Comtois*, No. 317621 (Mich. Ct. App. Dec. 27, 2013) (unpublished); *People v. Comtois*, 496 Mich. 859 (2014) (table).

On August 22, 2014, Petitioner filed his habeas petition. He asserts as grounds for relief that: (1) there was insufficient evidence that he penetrated the complainant's genital opening; (2) the prosecution failed to present any factual evidence to support the complainant's claim that he placed dirt in her mouth and threatened to kill or harm her; (3) the prosecution introduced and allowed perjured testimony; (4) the prosecution failed to prosecute him in a timely manner; (5) the prosecutor vouched for the complainant and portrayed Petitioner as a liar; (6) trial counsel provided ineffective assistance; and (7) appellate counsel provided ineffective assistance.

## II. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

    (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

### III. Analysis

## A. Claim One: Insufficient Evidence

Petitioner alleges that he was deprived of due process of law because there was insufficient evidence to convict him of penetrating the victim's genital opening. Petitioner contends that the complainant's testimony was vague as to where he touched her and whether he actually penetrated her. The Michigan Court of Appeals adjudicated this issue on the merits and concluded on direct review that the evidence sufficiently supported Petitioner's conviction for first-degree criminal sexual conduct.

### 1. Clearly Established Federal Law

The Supreme Court has held "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Following *Winship*, the critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citations and footnote omitted) (emphases in original).

The Supreme Court has "made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, __, 132 S. Ct. 2060, 2062 (2012) (*per curiam*). First, it is the responsibility of the trier of fact to decide what conclusions should be drawn from the evidence admitted at trial. *Id*. (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*)).

> And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court

instead may do so only if the state court decision was 'objectively unreasonable.' "

*Id.* (quoting *Smith*, 565 U.S. at 2) (quoting *Lett*, 559 U.S. at 773).

## 2. Application

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. Petitioner challenges his conviction for first-degree criminal sexual conduct, which involves "sexual penetration with another person" and some other aggravating circumstance. Mich. Comp. Laws § 750.520b(1). The only issue in dispute here is whether Petitioner sexually penetrated the complainant.

Under state law, "sexual penetration" is "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, *however slight*, of any part of a person's body or of any object into the genital or anal openings of another person's body." Mich. Comp. Laws § 750.520a(r) (emphasis added). "One object of the [Michigan] Legislature in providing for degrees of criminal sexual conduct was to differentiate between sexual acts which affected only the body surfaces of the victim and those which involved intrusion into the body cavities." *People v. Bristol*, 115 Mich. App. 236, 238 (1981). "[P]enetration of the labia majora is beyond the body surface." *Id.* Therefore, the female genital opening includes the labia majora. *Id.*

The registered nurse who examined the complainant after the alleged assault testified that "[t]he labia majora are the fat, outer lips of a female's genitalia," which "kinda cover everything else that's on the inside." (Trial Tr. Vol. II, at 229, May 14,

2008.)  The complainant testified that Petitioner "stuffed" his penis inside her private area, but that it did not go all the way in because it was too little.  (Trial Tr. Vol. III, at 112, May 15, 2008.)  When the prosecutor asked the complainant what she used her "private area" for, she stated "to pee out of."  (*Id*. at 113.)  Later, on cross-examination, defense counsel asked the complainant whether she had said Petitioner was not able to put his penis in her.  She responded, "Not all the way, it was too short."  (*Id*. at 146.)

A rational juror could have inferred from the testimony that Petitioner penetrated the complainant's labia majora.  Therefore, the state appellate court's conclusion – that the evidence supported Petitioner's conviction for first-degree criminal sexual conduct – was not contrary to, or an unreasonable application of, *Jackson*, and Petitioner is not entitled to relief on the basis of his challenge to the sufficiency of the evidence.

**B.      Claims Two through Six:  Insufficient Evidence of Death Threats and Dirt in the Complainant's Mouth, Perjury, Denial of a Speedy Trial, Prosecutorial Misconduct, and Ineffective Assistance of Trial Counsel**

Petitioner raised habeas claims two through six for the first time in his motion for relief from judgment.  The trial court rejected the claims because Petitioner could have raised the claims on direct review.  The State therefore argues in its answer to the habeas petition that claims two through six are procedurally defaulted.

**1.      Procedural Default**

In the habeas context, a procedural default is "a critical failure to comply with state procedural law."  *Trest v. Cain*, 522 U.S. 87, 89 (1997 ).  Under the doctrine of procedural default, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the

prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).

> Determining whether a habeas petitioner's claim has been procedurally defaulted is a four-step inquiry:
>
>> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that petitioner failed to comply with the rule. . . .  Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . .  Third, the court must decide whether the state procedural ground is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. . . .  Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Kelly v. Lazaroff*, 846 F.3d 819, 828 (6th Cir. 2017) (quoting *Stone v. Moore*, 644 F.3d 342, 346 (6th Cir. 2011) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

The state procedural rule in question here is Michigan Court Rule 6.508(D)(3), which prohibits state courts from granting relief from judgment if the defendant's claims could have been raised on appeal from the conviction and sentence or in a prior motion. An exception to this rule exists when the defendant demonstrates "good cause" for the failure to raise the claim on appeal or in a prior post-conviction motion and "actual prejudice from the alleged irregularities that support the claim for relief." Mich. Ct. R. 6.508(D)(3)(a) - (b).

Petitioner violated Rule 6.508(D)(3) by not raising claims two through six on direct appeal from his convictions. The first step of the procedural-default inquiry is satisfied.

When determining whether a state court enforced a state procedural rule, the Court "look[s] to the last reasoned state court decision" rejecting the petitioner's claim. *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc). The last state court to issue a reasoned decision on habeas claims two through six was the trial court, and it clearly and expressly relied on Rule 6.508(D)(3) to deny relief. The trial court quoted the rule and stated that, with the exception of Petitioner's claim about the sentencing guidelines, Petitioner could have raised his claims on direct review. The trial court went on to conclude that Petitioner had failed to establish "good cause" for not raising the issues on direct appeal and "actual prejudice" from the alleged irregularities. Because the trial court clearly enforced Rule 6.508(D)(3), step two of the procedural-default inquiry is satisfied.

Step three also is satisfied, because the procedural bar in Rule 6.508(D)(3) is an adequate and independent ground on which state courts may rely to foreclose review of a habeas petitioner's federal claims. *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005) (citing *Simpson v. Jones*, 238 F.3d 399, 407-08 (6th Cir. 2000), and *Munson v. Kapture*, 384 F.3d 310, 315 (6th Cir. 2004)).

Step four requires determining whether Petitioner has established "cause" for his failure to comply with Rule 6.508(D)(3) and resulting prejudice. Petitioner argues in habeas claim seven that his appellate attorney should have raised all his claims on direct

review. "Ineffective assistance of counsel can constitute cause for a procedural default."

*Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013), *cert. denied*, 135 S. Ct. 1545

(2015). The Court therefore looks to Petitioner's underlying claims to determine whether

appellate counsel was ineffective for failing to raise those claims on direct appeal. An

appellate attorney is constitutionally ineffective if (1) the attorney acted unreasonably in

failing to discover and raise nonfrivolous issues on appeal and (2) there is a reasonable

probability that the petitioner would have prevailed on appeal if his appellate attorney

had raised the issues. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland v.*

*Washington*, 466 U.S.668, 687-91, 694 (1984)).

### 2. The Underlying Claims

#### a. Evidence that Petitioner Threatened the Complainant and Put Dirt in Her Mouth

Petitioner alleges in claim two that the prosecution failed to support the

complainant's claim that Petitioner put dirt in her mouth and threatened to kill or harm

her. Petitioner contends that the only evidence of this was the victim's unsubstantiated

testimony.

Petitioner cites the Supreme Court's decision in *Jackson* to support his claim. To

the extent he is asserting that the prosecution failed to prove the "force or coercion"

element of the charge against him, his claim lacks merit because it merely challenges the

complainant's credibility and the complainant's testimony in a criminal-sexual-conduct

case does not have to be corroborated. Mich. Comp. Laws § 750.520h. Thus, appellate

counsel was not ineffective for failing to raise Petitioner's second claim on direct review.

### b. Alleged Perjury

The third habeas claim alleges that the prosecutor allowed the victim to perjure herself. Petitioner contends that the victim's story changed from when she was initially questioned by the police to the time of trial and that the evidence became more damning as the case progressed.

Prosecutors may not deliberately deceive a court or jurors by presenting evidence that they know is false. *Giglio v. United States*, 405 U.S. 150, 153 (1972). Prosecutors also may not allow false evidence to go uncorrected when it appears. *Id.* But to prevail on a claim that the prosecutor presented false testimony, a habeas petitioner must show that (1) the testimony was actually false, (2) the testimony was material, and (3) the prosecutor knew the testimony was false. *Amos v. Renico*, 683 F.3d 720, 728 (6th Cir. 2012); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998) (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)).

The complainant told the police that Petitioner held her arms down and tried to get in her, but she kept her legs together and did not know whether Petitioner was able to get in her. (Pet. for Writ of Habeas Corpus, Ex. 1, p. 1) At the preliminary examination, the complainant testified that she could not move her legs when Petitioner pinned her down and that Petitioner had tried to put his penis in her private area, but he could not put it in her all the way. (Prelim. Examination, at 11-12, Aug. 10, 2005.) Finally, at trial, the complainant testified her legs were up and apart during the assault and that Petitioner stuck his penis part-way inside her private area. (Trial Tr. Vol. III, at 111-12, May 15, 2008.)

Petitioner contends that the complainant's trial testimony – that her legs were up and apart – was inconsistent with the complainant's statement to the police and testimony at the preliminary examination. But the complainant explained at trial that, although she had been trying to keep her knees together, Petitioner had spread her legs apart. (*Id.* at 142.) Even if the complainant's testimony was inconsistent with her prior testimony or statement to the police, "mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *Lochmondy*, 890 F.2d at 822. Therefore, Petitioner's perjury claim lacks merit, and appellate counsel was not ineffective for failing to raise the claim on appeal.

### c. The Delay in Trying Petitioner

The fourth habeas claim alleges that the prosecution failed to try Petitioner in a timely manner. Petitioner asserts that he was arrested on July 26, 2005, but not tried until May 13, 2008, 33½ months after his arrest.

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. CONST. amend. VI. When determining whether a particular defendant was deprived of his right to a speedy trial, courts must consider and balance the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) any prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). None of these four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be

relevant." *Id*. at 533. "A one-year delay is presumptively prejudicial and triggers analysis of the remaining *Barker* factors." *Brown v. Romanowski*, 845 F.3d 703, 714 (6th Cir. 2017)

Petitioner was tried almost three years after his arrest, but much of the delay was due to waiting for the results of DNA testing. Because the absence of Petitioner's DNA on the complainant's underwear would have bolstered Petitioner's defense, he had an interest in having the tests completed, and some of the delay can be attributed to him. *Brown v. Bobby*, 656 F.3d 325, 334 (6th Cir. 2011). Other delays were due to Petitioner's motions for discovery, for an independent polygraph examination, for permission to admit evidence of the complainant's prior false accusation, and for appointment of a DNA expert. Nothing in the record suggests that any delay was due to bad faith on the part of the prosecution or an attempt to seek a tactical advantage over Petitioner.

Furthermore, the record indicates that Petitioner stipulated to an adjournment in the trial date at least six times, and the last stipulation occurred on April 22, 2008, which was less than a month before trial. The record also indicates that Petitioner never formally asserted his right to a speedy trial, and even though he alleges that he was prejudiced by the delay because he lost his liberty, he was released on bond 5½ months after his arrest. For all these reasons, Petitioner's speedy trial claim lacks merit, and appellate counsel was not ineffective for failing to raise a speedy trial claim on direct review.

### d.  The Prosecutor's Conduct

Habeas claim five alleges that the prosecutor engaged in misconduct by vouching for the complainant's credibility and by denigrating Petitioner during closing arguments. The "clearly established Federal law" here is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986), where the Supreme Court stated that

> it "is not enough that the prosecutor['s] remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 699 F.2d [1031, 1036 (11th Cir. 1983)].  The relevant question is whether the prosecutor['s] comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).  Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.*, at 642, 94 S.Ct., at 1871.

*Id.* at 181.

#### i.  Vouching

Petitioner contends that the prosecutor vouched for the complainant by stating that her story was consistent.  The actual comment was that the complainant "never changed her story."  (Trial Tr. Vol. V, at 83, May 20, 2008.)

> "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility [,] thereby placing the prestige of the [prosecutor's] office . . . behind that witness." *United States v. Trujillo*, 376 F.3d 593, 607 (6th Cir. 2004) (internal quotation marks omitted).  "Improper vouching involves either blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *Id.* at 607–08 (internal alterations and quotation marks omitted).

*United States v. Garcia*, 758 F.3d 714, 723 (6th Cir. 2014) (second alteration and ellipsis added).

The disputed comment here – that the complainant never changed her story – was a response to trial testimony that the complainant had accused her mother's boyfriend of sexually abusing her in the past and then recanted her accusation. The prosecutor was attempting to show that, unlike the situation with the mother's boyfriend, the complainant never recanted her accusations about Petitioner.

Furthermore, in their role as advocates, prosecutors may seek to establish the credibility of their chief witness through argument rather than their own personal assurances. *Id.* at 723. And arguing that prosecution witnesses are credible because their testimony was consistent is not improper if the prosecutor did not imply that she personally believed the witnesses or that she knew of evidence which demonstrated the witnesses' truthfulness, but was not before the jury. *United States v. Jackson*, 473 F.3d 660, 672 (6th Cir. 2007). Here, the prosecutor did not express a personal belief in the complainant, and she did not imply that she knew something about the complainant's truthfulness which was not revealed to the jury. Thus, the prosecutor's comment was proper, and appellate counsel was not ineffective for not raising the issue on direct appeal.

## ii. Denigrating Petitioner

Petitioner contends that the prosecutor engaged in misconduct when she made the following comments during closing arguments:

> I think his statements are very important. So you clearly have the defendant in this case out and out lying. And then, as it goes, he's trying to explain why things happened.
>
> . . . .

I believe, beyond a reasonable doubt, the evidence has also shown that the defendant . . . committed the crime of criminal sexual conduct in the second degree.

. . . .

This case is about a predator and his prey. And that's why he's guilty beyond a reasonable doubt.

(Trial Tr. Vol. V, at 87, 89-90, May 20, 2008.)

Prosecutors should refrain from interjecting their personal beliefs into the presentation of their cases, *United States v. Young*, 470 U.S. 1, 8-9 (1985), and from stating a personal opinion concerning the defendant's guilt, *United States v. Daniels*, 528 F.2d 705, 709 (6th Cir. 1976). But they may "argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008).

The prosecutor's remarks in this case were reasonable inferences from evidence about Petitioner's statements to police officers. The evidence established that the complainant met Petitioner in the park on Tuesday, May 24, 2005. The alleged assault occurred on the following day, Wednesday, May 25, 2005. On the next day, Thursday, May 26, 2005, the complainant and her friend met Petitioner in the park and spoke with him. Petitioner was stopped by Police Officer Beth Kangas Schwab that day, and he informed Officer Schwab that he had spoken to a couple of girls in the park, but that he did not know who they were and had not previously met them. (Trial Tr. Vol. II, at 135-37, 159, May 14, 2008.)

On the following day, May 27, 2005, Police Officer Kevin Klein spoke with Petitioner. Petitioner told Officer Klein that he first met and spoke with the two girls on the previous day (May 26, 2005), and that he did not go for a walk with the girl. (*Id*. at 177-78.) A few months later on November 20, 2005, Petitioner told Lieutenant Brian Cole of the Michigan State Police that he had tried to have sex with the complainant but that she would not allow him to have intercourse with her. So, they stopped what they were doing, put their clothes on, and left the park. (*Id*. at 197-99.) Finally, on January 20, 2006, Petitioner confronted Lieutenant Cole and accused Cole of writing untrue things about him in Cole's report about his interview with Petitioner on November 20, 2005. (*Id*. at 200.)

The prosecutor reasonably inferred from Petitioner's conflicting statements and the other evidence in the case that he lied to the police. Moreover, a prosecutor's gratuitous insult and reference to the defendant as a liar does not deprive the defendant of a fair trial. *Olsen v. McFaul*, 843 F.2d 918, 930 (6th Cir. 1988).

The prosecutor's other remarks – that Petitioner was a predator and guilty of criminal sexual conduct – were supported by testimony that he forced himself on a young woman who was a slow learner and dependent on others. And because a prosecutor's reference to a defendant as a "predator" does not necessarily deprive the defendant of a fair trial, *United States v. Davis*, 514 F.3d 596, 616 (6th Cir. 2008), the prosecutor's remarks about Petitioner were not improper.

Finally, the trial court instructed the jurors more than once that the attorneys' arguments were not evidence. (Trial Tr. Vol. II, at 99-100, May 14, 2008; Trial Tr. Vol.

V, at 57, May 20, 2008.)  For all these reasons, the prosecutor's remarks did not deprive

Petitioner of a fair trial, and appellate counsel was not ineffective for failing to raise

Petitioner's prosecutorial-misconduct claim on direct appeal.

### e.  Trial Counsel

The sixth habeas claim alleges that trial counsel was ineffective.  Petitioner

contends that trial counsel was ineffective for failing to (i) object to the prosecutor's

conduct, (ii) object to the speedy-trial violation, (iii) impeach the victim with her prior

inconsistent statements, (iv) object to the improper preservation of DNA evidence, and

(v) request an independent examination of the DNA evidence.

An attorney is constitutionally ineffective if "counsel's performance was

deficient" and "the deficient performance prejudiced the defense."  *Strickland*, 466 U.S.

at 687.  An attorney's performance is deficient if "counsel's representation fell below an

objective standard of reasonableness."  *Id*. at 688.  The petitioner must show "that

counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.

An attorney's deficient performance is prejudicial if "counsel's errors were so

serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id*.  The

defendant must show "a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."  *Id*. at 694.

The prosecutor's remarks about the consistency of the complainant's story and

Petitioner's lies did not deprive Petitioner of a fair trial, and Petitioner's speedy-trial

claim lacks merit because, among other things, he stipulated to postponements of the trial

date and he failed to show actual prejudice from the delay.  Consequently, trial counsel's failure to object to the prosecutor's conduct and to the delay in trying Petitioner did not constitute ineffective assistance.

Petitioner claims that his attorney should have impeached the victim with her prior inconsistent statements.  The record, however, reveals that defense counsel *did* question the complainant about her prior inconsistent statement to the police in which she stated that she held her legs together and that she did not know whether Petitioner had penetrated her.  (Trial Tr. Vol. III, at 142-44, May 15, 2008.)  Defense counsel also questioned the complainant about inconsistencies between her statements to a nurse and an employee of the Child Advocacy Center.  (*Id*. at 144-46.)  The record belies Petitioner's claim about his attorney not attempting to impeach the complainant.

Petitioner's remaining claims about trial counsel concern the DNA evidence. Petitioner alleges that defense counsel should have objected to the evidence being improperly preserved.  According to Petitioner, a buccal swab was taken from him on May 26, 2005, and stored in a locker until October 6, 2005, when it was finally removed from the locker and refrigerated.

 Although Petitioner contends that the prosecution acted in bad faith by not preserving the evidence, the failure to refrigerate the evidence could have been the result of negligence, as opposed to, bad faith.  *Cf. Arizona v. Youngblood,* 488 U.S. 51, 58 (1988) (stating that the failure to refrigerate the clothing of a sexual assault victim and the failure to perform tests on semen samples "can at worst be described as negligent") Furthermore, Petitioner has not shown how failing to refrigerate the sample prejudiced

him.  And even though he contends that defense counsel should have requested an independent examination of the DNA evidence, the record indicates that defense counsel *did* request county funds to hire someone who could conduct an independent examination of the DNA.  *See* transcript of motion for appointment of DNA expert, ECF No. 11-10.

To conclude, trial counsel performed adequately.  Therefore, appellate counsel was not ineffective for failing to assert a claim about trial counsel on direct appeal.

### 3.  Conclusion on Claims Two through Six

Habeas claims two through six regarding trial counsel, the prosecutor's conduct, the lack of a speedy trial, the alleged perjury, and the complainant's testimony about Petitioner's conduct lack merit.  Therefore, appellate counsel was not ineffective for failing to raise those claims on direct appeal, and Petitioner has failed to establish "cause" for his procedural default of not raising claims two through six on direct appeal.

The Court need not determine whether Petitioner was prejudiced by the alleged constitutional errors, because he has not shown "cause" for his procedural default.  *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).  In the absence of "cause and prejudice," a habeas petitioner can proceed with a procedurally defaulted claim only if he "demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' "  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with

new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has not produced any new evidence that was not presented at trial. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to address the substantive merits of claims two through six. Those five claims are procedurally defaulted, as all four elements of the procedural-default inquiry are satisfied.

## C. Claim Seven: Ineffective Assistance of Appellate Counsel

The seventh and final claim raises an independent argument about appellate counsel. Petitioner contends that appellate counsel did not review all the facts, investigate meritorious issues, or include all his issues in the appeal of right. Petitioner maintains that, but for counsel's conduct, the result of the appeal would have been different.

The trial court addressed and rejected this claim in its order denying Petitioner's motion for relief from judgment. The court stated that Petitioner had "failed to provide the Court with *any* evidence or information to support the theory that appellate counsel erred in deciding not to raise certain issues on appeal." *People v. Comtois*, No. 05-10619-FC, Op. and Order Denying Deft's Mot. for Relief from J., page 6 (Bay Cty. Cir. Ct. Mar. 15, 2013) (emphasis in original).

It is clearly established federal law that

[a]ppellate counsel "need not advance every argument, regardless of merit, urged by the appellant." *Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)(emphasis in original). Furthermore, there is no

> constitutional right to have *every* nonfrivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), and tactical choices regarding issues raised on appeal are properly left to the sound professional judgment of counsel. *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

*Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751–52).

The claims that appellate counsel failed to raise on appeal lack merit for the reasons given above, and there is not a reasonable probability that Petitioner would have prevailed on appeal if his attorney had raised all his claims on direct review. Consequently, appellate counsel was not ineffective, and the state trial court's rejection of Petitioner's claim about appellate counsel was not contrary to, or an unreasonable application of, Supreme Court precedent. "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

## IV.  Conclusion

Habeas claims two through six are procedurally defaulted, and the state courts' adjudication of Petitioner's claims about the sufficiency of the evidence and appellate counsel did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. Accordingly, the habeas petition is denied.

## V.  Certificates of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition.  Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]"  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong . . . .  When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists could not debate the Court's assessment of Petitioner's first and seventh claims regarding the sufficiency of the evidence and appellate counsel.  Reasonable jurists also could not find it debatable whether the Court's procedural ruling on claims two through six is correct or whether the petition states a valid claim of the denial of a constitutional right.  The Court therefore declines to grant a certificate of appealability on any of Petitioner's claims.  Petitioner nevertheless may proceed *in forma pauperis* on appeal if he appeals this decision, because he was granted leave to proceed *in*

*forma pauperis* in this Court, and an appeal could be taken in good faith. Fed. R. App. P. 24(a)(3)(A).

s/Paul D. Borman<br>
Paul D. Borman<br>
United States District Judge

Dated: May 22, 2017

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 22, 2017.

s/D. Tofil<br>
Deborah Tofil, Case Manager